(No. 80-CC-2081– )

DIANNA DYER, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed May 14, 1982.*

*Opinion filed July 14, 1983.*

*Order on motion to dismiss filed May 12, 1988.*

NANCY J. ANDERSON and DAVIS, MINER, BARNHILL & GALLAND, for Claimant.

NEIL F. HARTIGAN and TYRONE C. FAHNER, Attorneys General (WILLIAM R. WALLIN and WILLIAM P. KING, JR., Assistant Attorneys General, of counsel), for Respondent.

## OPINION

HOLDERMAN, J.

This matter comes before the Court upon Claimant's motion for reconsideration of an order of dismissal dated September 30, 1981, and Respondent's response to Claimant's motion, dated December 31, 1981.

This case is similar to a great many cases involving the same question. In the present case, the complaint was filed on May 23, 1980, in which Claimant alleged that she was entitled to the sum of $145.00 for services rendered while working with the Department of Public Aid.

On October 30, 1980, Respondent filed its motion to dismiss setting forth that the dismissal motion was brought pursuant to Ill. Rev. Stat. 1979, ch. 110, par. 48i. Said motion also sets forth that Claimant's claim arises

from the provisions of AFSCME Collective Bargaining Agreement RC-14-OCB entered into by the union and the Department of Corrections and various other departments of the State of Illinois, and that Claimant filed a grievance pursuant to the procedure set forth in the bargaining agreement which was settled at step 4 of that procedure.

Respondent's motion further sets forth that step 4 of the grievance procedure within the collective bargaining agreement provides for compulsory arbitration which effectively divests the Director of Personnel of the ultimate authority to adjudicate employee grievances, and that section 8c of the Personnel Code (Ill. Rev. Stat. 1979, ch. 127, par. 63b108c) proscribes the Director of Personnel from entering into agreements calling for compulsory arbitration.

Pursuant to Respondent filing its motion to dismiss, the Court dismissed this cause on September 30, 1981.

Claimant filed a motion for reconsideration and, on August 20, 1981, Respondent received an affidavit in which Director Louis J. Giordano, Department of Personnel, stated that upon reviewing the facts in this case, he adopts the resolution of this grievance as his own decision. This affidavit states as follows:

"I, Louis J. Giordano, being first duly sworn on oath depose and say as follows:

1. That I am the Director of the Department of Personnel.

2. That in my capacity, I am familiar with the Personnel Code, Rules of the Department of Personnel, Pay Plan and collective bargaining agreements.

3. That pursuant to the powers granted the Director, certain collective bargaining agreements have been entered into on behalf of the State of Illinois, specifically RC-14, which is the subject of the current claim.

4. The contract provides at Article V, Section 2 for the creation and operation of a formalized grievance procedure to resolve contract disputes between the employer and the employee.

5. That the claim of the employee was processed pursuant to this contractual grievance procedure and was determined to be due under the terms of the contract.

6. I have reviewed the grievance and its resolution and have determined that the resolution is one I would have reached and therefore, exercising my discretion as authorized by the Personnel Code, I concur with the result and adopt the resolution of this grievance as my own."

The question before this Court in this case and many similar cases is whether the procedure adopted is one within the power of the Director of Personnel or whether it is illegal.

It is the Court's opinion that the Director of Personnel's position was created by statute and his powers and duties are therefore limited to the statute creating said office.

Grievance procedures under the rules and under the union contract are set forth as follows:

A reference to the rules of the Department of Personnel and the agreements with AFSCME reveals the following summary of provisions relating to the grievance procedure to be followed under the rules and under the contract.

1967 Rules. Grievance is to be filed, *within five days* after the employee learns of it, with his immediate supervisor who must act within five days. If he does not, then the employee goes to the "next-higher supervisor." Then if not resolved in five days, he goes to the agency head *within 10 days* after submitting to "his next-higher supervisor." After that, if not resolved *within 20 days* he submits it to the Director of Personnel "for review and final determination."

The Director *shall* appoint 15 employees to comprise a grievance committee panel to make "recommendations to the Director for resolution * * *" The Director "shall" approve, disapprove or modify the

recommendations and render a decision which shall be final.

An employee's failure to act within the time limits shall be construed an abandonment of his right to proceed further unless the time limits are extended by mutual agreement.

1977 Rules. Step 1 has the same time limit—five days. Step 2 provides for going to the "next-higher supervisor" *within five days* after notification of the supervisor's decision. The next step (called level 3) is to go to the Director within five days after receiving the decision at level 2.

The rules provide that the Director may review the matter on its face or cause a hearing. After review, the Director releases his decision which is final. (Note: No reference is made to a grievance panel as set forth in the 1967 rules.)

The 1977 rules provide that failure to meet the time limits shall resolve the matter in favor of the other unless it is mutually agreed to extend the time limits.

1978 Rules. They are similar to the 1967 rules but provide the Director shall appoint 25 employees to comprise the grievance panel for recommendation. They also provide that failure to meet the time limits shall mean the employee has withdrawn his grievance or has accepted the last decision made on the grievance if he so indicates.

A new step was inserted to provide for going from the "next-higher supervisor" at step 2. He next shall go (step 3) to the head of the operating agency and then to the Director who appoints a 25-member grievance panel for recommendation.

1980 Rules. They have much the same procedure as

the 1978 rules, again providing that failure to follow the procedure within the time limits shall mean withdrawal of the grievance or acceptance of the last answer given if he so indicates.

The agreements with the AFL-CIO for July 1, 1977, to June 30, 1979, provide four steps to follow: raise the grievance within 10 days to the immediate supervisor who has five days to resolve the matter; then presents it to the facility head within five days after step 1 response is given or is due. The facility head has 10 days to *discuss* the grievance with the employee and the union representative. Then within five days after the discussion the facility head shall answer the grievance. Next it goes to the agency head within 10 days after step 2 is answered or after an answer is due. The agency head is to have a *meeting* with the union representative and the employee. The meeting is to be held in 10 days and he shall answer the grievance within 10 days thereafter. If not settled by prior procedure, it goes to step 4 which provides for a *meeting* with the employer and the union, and *at that time either party can decide to go to arbitration.* The Director, upon notice, selects three persons as a grievance panel, none of whom is a State employee. The panel reduces its decision to writing and submits it to the Director who "shall approve it, and the Director's decision shall be final." Step 4 calls for compulsory arbitration at 4(c) if either party desires at 4(a). The union agreement of July 1, 1979, to June 30, 1981, calls for quite similar procedures with compulsory arbitration at step 4.

The contract provides that failure to appeal and proceed within the time limits is a withdrawal of the grievance by the employee.

While the procedures are similar at the outset, it is

noted that the time limits are changed. Further, there is no provision in the contract for a 25-member panel to recommend a decision to the Director. Ultimately however, the contract procedure results in compulsory arbitration if either the employee or the employer requests it. The employee knows under the contract procedure that ultimately his grievance will result in arbitration if he so desires. This may affect his decision to accept or reject a decision made at a lower level. Thus, the procedure is substantially different under the rules as compared with the procedure under the contract.

The 1980 rules contain a clause referring to collective bargaining agreements which apparently is contained in the rules for the first time:

"3-20 <u>Procedure</u>: Grievances shall be submitted in accordance with the following procedure unless the Director permits an agency to vary the number or content of the steps therein prescribed upon the written request of the operating head of an agency and for good cause shown therein, *except that a grievance arising out of interpretation and/or application of a provision contained within a collective bargaining agreement shall be heard pursuant to the procedure established therein for the respective bargaining unit.*"

The Court's attention has been called to the case of *People ex rel. Olin Corporation v. Department of Labor* (1981), 95 Ill. App. 3d 1108, and which the supreme court at a later date refused to review. In this case, the Director of the Department of Labor attempted to withdraw his own order entered three months earlier and directed that a hearing be held on the issues not appealed by the parties which were not "ministerial or administrative" in nature but were "judicial or quasi-

16

judicial" for which a writ of prohibition could issue. The court, in passing upon this case, called attention to the fact that a 35-day limit, within which a complaint in an action seeking review of a final administrative decision must be filed, is a jurisdictional requirement. The court further stated that since administrative agencies are creatures of statute, they may allow rehearings or modify or alter their decision only where authorized to do so by statute.

In none of the briefs or pleadings before the Court in the present case are any statutory provisions cited allowing the Director of Personnel to follow the procedure outlined by filing affidavits and thus passing upon the merits of a particular cause where the statute has not been followed. It therefore appears that an attempt is being made to do indirectly that which cannot be done directly.

The time element set forth in the statute for appeals has been totally ignored and, in this particular case, there was an attempt by the Director of Personnel to take charge of the case after it had been filed in the Court of Claims. The affidavit of the Director of Personnel was entered on August 20, 1981, while the case was still pending before the Court of Claims. If this procedure is allowed, then the Court will have to determine whether the Director of Personnel, by affidavit, can render a decision for a case already pending before this Court.

In arriving at our decision in these cases, we are compelled to give recognition to the statutory provision on the jurisdictional limitation of the Department of Personnel as set forth in the Personnel Code.

"§8c. Jurisdiction. Conditions of Employment.
For positions in the State service subject to the jurisdiction of the Department of Personnel with respect to conditions of employment:
(1) For establishment of a plan for resolving employees' complaints, *excluding compulsory arbitration*."

In light of this command of our legislature, there is no way to circumvent the exclusion of compulsory arbitration, either by department rules, agreement with the union, or affidavits of the Director of Personnel. The statutory language is plain and any attempt to ignore it must be viewed as illegal and of no avail. Any change must come from the legislature as this Court has no authority to do so itself.

It is the Court's opinion that the action by the Director of Personnel was made without any authority being granted to him to make such a decision at the time it was made and therefore the procedure by affidavit at this particular time is illegal.

For the reasons above cited, this cause is dismissed.

## OPINION

Roe, C.J.

This is a claim by a State employee for back wages due as a result of a reduction of a suspension from her job from seven days to three days. The underlying facts surrounding the suspension and reduction are not in the record and are not relevant to the issues herein. The issues in this claim and in the many similar claims which are now pending before the Court relate to the legal validity of the procedure by which the Claimant secured the reduction of her suspension and therefore allegedly became entitled to back pay. This claim has evolved into a "test case" and it is our intention not only to decide the narrow issues herein but to provide guidelines concerning the scope of our review in such cases that are now pending and such cases as may arise in the future.

This claim is before the Court for the third time. On September 30, 1981, an order granting Respondent's motion to dismiss was filed. The motion to dismiss

stated that Claimant's claim arose out of settlement of a grievance pursuant to a procedure set forth in a provision of a collective bargaining agreement. Specifically, it was settled at "Step 4(a)" of the grievance procedure contained in collective bargaining agreement RC-14-OCB. Those contract provisions are similar, if not identical, to the grievance procedure provisions of several collective bargaining agreements between the State and its collective bargaining units in effect at the time this claim arose and which are currently in effect. Step 4(a) provides in pertinent part that:

"* * * the Employer (the State) and Union (on behalf of the member of the collective bargaining unit) shall meet to discuss the grievance(s) which has been appealed to Step 4 at a time and place of mutual convenience. Within three (3) working days of such meeting, either party may decide that the grievance(s) raises a substantial issue which should be submitted to an independent arbitrator in accordance with the procedure set forth in Step 4(b)."

The procedures for step 4(a) were subsequently negotiated and reduced to a memorandum of understanding. The step 4(b) provision of the agreement set forth how an arbitrator would then be chosen. Step 4(c) of the grievance procedure consisted of the actual arbitration, the procedures of which are in pertinent part as follows:

"Both parties agree to attempt to arrive at a joint stipulation of the facts and issues * * * to be submitted to the arbitrator.

The Employer or Union shall have the right to request the arbitrator to require the presence of witnesses and/or documents. Either party shall bear the expense of its own witnesses who are not employees of the Employer.

Questions of arbitrability shall be decided by the arbitrator. The arbitrator shall make a preliminary determination on the question of arbitrability. Once a determination is made that the matter is arbitrable or if such preliminary determination cannot be reasonably made, the arbitrator shall then proceed to determine the merits of the dispute. The arbitrator shall neither amend, modify, nullify, ignore, add or subtract from the provision of this Agreement.

The expenses and fees of the arbitrator and the cost of the hearing room shall be shared equally by the parties. Nothing in this Article shall preclude the parties from agreeing to the appointment of a permanent arbitrator(s)

during the term of this Agreement or to use the expedited arbitration procedures of the American Arbitration Association.

*The decision and award of the arbitrator shall be final and binding on the Employer, the Union, and the employee or employees involved* ° ° ° *."* (Emphasis added.)

It was the Respondent's position that this grievance procedure constituted compulsory arbitration which effectively divested the Director of the (then) Department of Personnel of the ultimate authority to adjudicate employee grievances and which was proscribed by section 8c(1) of the Personnel Code. (Ill. Rev. Stat., ch. 127, par. 63b108c.) Respondent argued that because it was in violation of the procedural requirements of the Personnel Code, it was void and unenforceable. By pursuing this invalid remedy, the Claimant was said to have failed to exhaust valid administrative remedies as provided by statute and regulation, and is therefore in violation of section 25 of the Court of Claims Act (Ill. Rev. Stat., ch. 37, par. 439.24—5) and Rule 6 of the Rules of the Court of Claims, which is grounds for dismissal.

As is not uncommon in the majority of claims by State employees for back wages in this Court, the Claimant filed no objection or reply to the Respondent's motion to dismiss, the latter pleading being most common to claims for back wages in this Court.

In granting the Respondent's motion to dismiss, we found, *inter alia,* that step 4(a) of the collective bargaining agreement's grievance procedure provided the employee with a right to have his grievance decided by binding arbitration, that this real threat of binding arbitration clearly tainted any resolutions arrived at pursuant to said step 4(a), that the Director of the Department of Personnel was proscribed by the Personnel Code from entering into any agreement calling for compulsory arbitration, and that the

Personnel Code placed within the sole discretion of the Director of the Department of Personnel the exclusive right to determine the outcome of any employee grievance. We then held that any provision in a collective bargaining agreement requiring binding or compulsory arbitration is null and void, and any grievance procedure predicated upon the fact that the ultimate determination could result from binding arbitration is likewise null and void.

In order for this case to be viewed in its proper perspective, it is important to point out certain aspects which do not appear in its record, but which are exemplified in the approaches that were taken in the many similar cases which came before it. Many cases involving claims to collect lapsed funds for back pay alleged to be due as a result of grievance resolutions at the step 4(a) and step 4(c) level preceded this case. In the beginning, upon the motion of the Respondent, the Court dismissed them based upon the rationale set forth in the preceding paragraph. Gradually, however, it became apparent that the approach taken by the Respondent in defending these claims has become eclectic. Although the laws, personnel rules, and the collective bargaining agreement never were amended, and despite the language in the opinions typified by that contained in the last sentence of the first paragraph of the September 30, 1981, order in the case at bar (that "any grievance procedure predicated upon the fact that the ultimate determination could result from binding arbitration is likewise null and void"), claims made to collect lapsed funds for back pay alleged to be due as a result of grievance resolutions at the lower steps of the collective bargaining agreement's grievance procedure were agreed to by the Respondent and paid based on the stipulations. While it is true, as pointed out in our

opinion on rehearing in this case, *infra,* that the grievance procedures of the collective bargaining and the personnel rules were the same at the lower levels, the threat of eventual binding arbitration clearly could influence the result. Then a scheme was developed to justify making awards in those claims resulting from step 4(a) and step 4(c) grievances. Because the Personnel Code provided the Director of the Department of Personnel with the right to make final determinations on employee grievances, the scheme involved his executing an affidavit purporting to make the grievance resolutions in effect his own. These affidavits were never filed along with the complaints in the claims, but were filed by counsel for the Respondent if he chose to stipulate to awarding the claims. They were not filed in every claim resulting from arbitration or pre-arbitration agreements.

Thus, in the case at bar, on November 4, 1981, shortly after her claim was dismissed, the Claimant moved for reconsideration and vacation of the order, seeking leave to file such an affidavit and representing to the Court that counsel for the Respondent had been advised of the motion and stated that he would not oppose it. Approximately two months later a response to the motion along with the affidavit was filed by the Respondent. The affidavit, bearing a notarization date of over a month prior to the order of dismissal and over four months prior to the date the affidavit was actually filed, provided in pertinent part as follows:

"6. I have reviewed the grievance and its resolution and have determined that the resolution is one I would have reached and therefore, exercising my discretion as authorized by the Personnel Code, I concur with the result and adopt the resolution of this grievance as my own.

s/ Louis J. Giordano"

In response to the motion for reconsideration, counsel for the Respondent stated that he would not object to its

being granted nor would he object to the granting of an award.

On May 14, 1982, this Court rendered its opinion on the motion striking down the practice of the Director executing such affidavits. Citing *People ex rel. Olin Corporation v. Department of Labor* (1981), 95 Ill. App. 3d 1108, 420 N.E.2d 1043, we said:

"In none of the briefs or pleadings before the Court in the present case are any statutory provisions cited allowing the Director of Personnel to follow the procedure outlined by filing affidavits and thus passing upon the merits of a particular cause where the statute has not been followed. It therefore appears that an attempt is being made to do indirectly that which cannot be done directly.

The time element set forth in the statute for appeals has been totally ignored and, in this particular case, there has been an attempt by the Director of the Department of Personnel to take charge of the case after it had been filed in the Court of Claims. The affidavit of the Director of Personnel was entered on August 20, 1981 while the case was still pending before the Court of Claims. If this procedure is allowed, then the Court will have to determine whether the Director of Personnel, by affidavit, can render a decision for a case already pending before this Court."

The Respondent promptly filed a motion for reconsideration and requested oral argument before the full Court. Because of the importance of the case and because we felt that the issues raised should be better addressed we exercised our discretion pursuant to Rule 21 of the Rules of the Court of Claims and ordered oral arguments to be held. At the oral argument the parties attempted to present unified positions and an agreed proposal for resolution of this claim and others like it. We wish to interject at this point that we encourage such combined efforts by the parties, especially in this area of the Court of Claims' jurisdiction. Although the parties did apparently unite behind the proposal, the rationales offered seemed to vary among counsel and in certain respects from arguments made in the Respondent's memorandum of law which accompanied its motion for reconsideration. Because what was presented at the oral

argument occurred later we will address our comments more directly to what was presented there. First, we want to state that we accept the Respondent's counsel's apology for any confusion and inconvenience its changes in position on back wage claims may have caused. Having been on the bench throughout those changes, we have discerned the difficulties and conflicts which have been encountered. Those problems were no doubt exacerbated by the conflict brought on by Illinois' constitutional separation of powers and a difference of legal opinion between two constitutional entities. Offering by way of consolation, not justification, we suggest that a lack of diligent prosecution by the claimants in a large number of the back wage claims perhaps added to the problems.

Following those opening apologies, the Respondent presented the unified position and urged us to accept it for several reasons. The reconsidered position of the Respondent was stated as follows:

"It is the position of the Attorney General in regard to the payment of wage claims that are grieved under the Collective Bargaining Agreement that the Office will support and stipulate to those claims for back wages based on resolution of a grievance using the procedures set forth in the Collective Bargaining Agreement when (one) the relief granted could have been granted under the grievance procedures set forth in the Rules of the Department of Personnel (now Central Management Services hereinafter referred to as CMS) and (two) the director of CMS adopts that position with an affidavit. Whether the affidavit is necessary is open to question and if the Court feels it is not necessary, we would not use that procedure any more." (tr. 5)

In support of its position, Respondent gave several reasons, many of which were policy reasons, and then stated why it felt that its previous position taken on these types of claims was in error. Among the policy reasons stated was that collective bargaining is a "way of life" in Illinois' State government. It has existed a long time, the legislature has recognized it by several references made in statutes, it has Civil Service Commission recognition,

and no court has yet declared a collective bargaining agreement invalid. Respondent further stated that it was "good government" and that the State should stand behind its employees and their contracts which were entered into in good faith. These observations and arguments have been raised by various counsel for claimants in similar back wage claims.

This Court does take into consideration certain policy matters in appropriate cases. However, we do not view this type of claim as being proper for a policy-based or influenced decision. Policy should not dictate the extent of authority of a director of a department and/or the legality of his or her actions where the legislature has delineated the same by statute and the director has further defined the same by duly promulgated rules. No amount of policy can make a provision of a contract or other action which is proscribed by law valid and enforceable in this Court regardless of the amount of good faith a party has. Our concern in this type of case is to uphold those policy positions which have been taken by the legislature.

We wish to emphasize also that we are not opposed to collective bargaining for State employees. It is not proper for us to take a position on such a subject. By way of illustration, we point to our order of August 11, 1982, issued in *Eberwein v. State*, No. 80-CC-2073 (as yet unpublished). That case involved a claim for back wages by a State employee due her as a result of a decision reached through binding arbitration. The key distinction was that her employing agency was exempt from the Personnel Code. The Respondent nevertheless moved for dismissal on the grounds of the policy and legislative intent behind the provision of the Personnel Code which prohibits compulsory arbitration. Respon-

dent also raised several policy arguments commonly made by opponents of the proposition of binding or compulsory arbitration for State employees in general. In holding in favor of the Claimant we said:

"* * * We do not think it our function to, in effect, extend the prohibition against compulsory arbitration contained in the Personnel Code across the board to all elective officials or even to an agency under the Governor which is expressly exempt from the Personnel Code. While the Respondent has well stated the argument against compulsory arbitration for governmental employees, we do not think it to be a general public policy expressed by the legislature."

An award was eventually made in that case on December 1, 1982.

We have reviewed the substantive arguments raised and considered them in light of our opinion of May 14, 1982. After much thought and research we have concluded that we cannot accept the parties' latest proposal as stated. We find that Respondent's two conditions for concurrence with the grievance decisions resulting from the process set forth in the collective bargaining agreement, although not free from ambiguity, do not make sense upon close examination. The first stated condition was that the relief granted could have been granted under the personnel rules. The only relief grantable which would bring a grievance before this Court is monetary relief. Of course, this remedy may be ordered under either grievance system. On the other hand, if the parties were referring to entitlement when speaking of relief, *i.e.*, that a Claimant would have been entitled to the same relief pursuant to some personnel rule, then the condition would seem too narrow. It is entirely probable that a provision of a collective bargaining agreement may entitle a person to a monetary remedy where the personnel rules are silent on the issue. Therefore, while Respondent urges us to recognize the validity of the collective bargaining

agreement, it appears to be saying that it will not do so unless a similar provision exists in the form of a personnel rule.

With respect to the second condition, that of adoption of an arbitrator's decision or pre-arbitration decision by affidavit, the *amicus curiae* discourse by counsel from CMS leads us to think that it is a false issue and more of a remnant of scheme or fiction being perpetuated to circumvent certain legal positions previously taken by the Respondent and accepted by us.

We still adhere to those principles stated in our May 14, 1982, opinion wherein, citing *People ex rel. Olin Corporation v. Department of Labor, supra,* we stated:

"° ° ° (S)ince administrative agencies are creatures of statute, they may allow rehearings or modify or alter their decision only where authorized to do so by statute.

In none of the briefs or pleadings before the Court in the present case are any statutory provisions cited allowing the Director of Personnel to follow the procedure outlined by filing affidavits and thus passing upon the merits of a particular cause where the statute has not been followed. It therefore appears that an attempt is being made to do indirectly that which cannot be done directly."

However, upon reconsideration and much research we have arrived at a different conclusion affecting the issues in the cases involving arbitration and pre-arbitration decisions for the following reasons.

The Personnel Code is a statutory plan devised to govern certain State employees and the Director of CMS. It is to be noted that many positions and offices are exempt from the Personnel Code, some *in toto* but some only from certain types of jurisdiction. Among other things, the Personnel Code sets forth three separate areas of jurisdiction of CMS: classification and compensation, positions based on merit and fitness, and conditions of employment. Under each type of jurisdiction the Director of CMS has been granted

certain powers and duties with respect to rulemaking. See section 8 and the specific powers contained in sections 8a through 8e. Ill. Rev. Stat. 1985, ch. 127, pars. 63b108-63b108e.

Our opinion of May 14, 1982, and our previous opinions in this case and in the others like it were based upon section 8c(1). (Ill. Rev. Stat. 1985, ch. 127, par. 63b108c(1).) This subsection essentially provides that the Director of CMS is to establish by rule a plan for resolving employee grievances and complaints, but that he is not empowered to establish such a system featuring compulsory arbitration. A grievance system was promulgated. Prior to the effective date of the 1980 personnel rules the system called for the Director of the Department of Personnel to make the final determination on a grievance issue. We held that the provisions of the collective bargaining agreements calling for arbitration as a final resolution were in conflict with the personnel rules and therefore void. The 1980 personnel rules contain a clause referring to collective bargaining agreements which apparently was inserted for the first time. It reads as follows:

"3-20 Procedure: Grievances shall be submitted in accordance with the following procedure unless the Director permits an agency to vary the number or context of the steps therein prescribed upon the written request of the operating head of an agency and for good cause shown therein, *except that a grievance arising out of interpretation and/or application of a provision contained within a collective bargaining agreement shall be heard pursuant to the procedure established therein for the respective bargaining unit.*" (Change emphasized.)

The collective bargaining agreements called for binding arbitration. We held that such a system was in violation of the provision of the Personnel Code which proscribed the Director from establishing a grievance system featuring compulsory arbitration.

Our decisions were based in part on our reasoning

that the binding arbitration called for in the collective bargaining agreements and the compulsory arbitration referred to in the Personnel Code were one and the same. This reasoning to us was only common sense. All concerned would agree that the arbitration provided for in the collective bargaining agreements is final and binding. We reasoned that the aspect of compulsion was inherent therein also. If an agreed resolution of a grievance could not be reached, the parties would be compelled to submit their problem to arbitration. Under the terms of contract there is no choice. We would have agreed that the parties to the contract voluntarily and under no compulsion agreed to decide disputes arising under the contract by means of final and binding arbitration. However, by so agreeing they would then be compelled to submit their grievances to binding arbitration. Any choice was contracted away. At least one text writer would concur with this line of reasoning. T. Kahel, Labor Law, vol. 5, §2308(3) (1982).

However, we have now reached a different conclusion. Although there is not a great deal of authority on the issue, as admitted by the Claimant at the oral argument, we now think that there is a real distinction between compulsory and binding arbitration. Our research of the existing authorities and literature indicates that "compulsory" when used in connection with "arbitration," in the legal sense, is a term of art and as such carries a more narrow and restricted meaning than the common and ordinary interpretation of the term that we attributed to it previously. Compulsory arbitration, in the labor law sense of the term, is where by the force or effect of law, a party is compelled to submit a dispute to arbitration. It is commonly employed by governments to prevent strikes in certain sensitive sectors of employment where a strike could

wreak havoc, *e.g.* police and fire fighters. In contrast is voluntary arbitration. Voluntary arbitration takes place where the parties voluntarily agree (without compulsion) to arbitrate a specific issue. Binding arbitration means nothing more than that the parties are bound by the decision of the arbitrator as opposed to advisory arbitration where the decision of the arbitrator is just that—advisory—and neither party is bound by it. Compulsory arbitration and voluntary arbitration can be either binding or advisory. However, it would be a contradiction of terms to say that compulsory arbitration could also be voluntary. *Black's Law Dictionary* (4th ed.); 6 C.J.S. *Arbitration* subsection 5-7; B.N.A.-L.R.X. 16, 17; *Arbitration and the Expanding Role of Neutrals*, G. Somers & B. Dennis, ed. (1970); *Public Sector Labor Relations*, Council of State Governments in conjunction with International Personnel Management Association (1975); F. Elkouri & E. Elkouri, *How Arbitration Works* (3d ed. 1973); M. Forkosch, *A Treatise on Public Employee Labor Law* (1969); J. Levine & E. Hagburg, *Public Sector Labor Relations* (1979); M. Lieberman, *Public Sector Bargaining* (1980); N. Levin, *Successful Labor Relations* (1978); C. Gregory and H. Katz, *Labor and the Law* (1979); *Portrait of a Process—Collective Negotiations in Public Employment* by Public Employment Relations Service (1979); J. Steiber, *Public Employee Unionism: Structure, Growth, Policy* (1973); L. Teller, *A Labor Policy for America* (1945); B. Werne, *The Law and Practice of Public Employment Labor Relations* (1974).

Having found that there exists a distinction between compulsory arbitration and final and binding arbitration, it remains for us to decide the effect to be given to the final and binding arbitration provisions of the collective bargaining agreement.

The grievance procedure provided for in the collective bargaining agreements is clearly not compulsory arbitration in the labor law sense of the term. It was not forced upon the parties by any statute or rule. Through the processes of collective bargaining the parties voluntarily consented to it. The fact that it is final and binding arbitration is not relevant here and does not bring it within the proscription of section 8c(1) of the Personnel Code.

It could be argued that the amendment to the 1980 personnel rules effectively provided for compulsory arbitration by bootstrapping the collective bargaining agreement's grievance resolution provisions into the rules. By rule now, when read in conjunction with the collective bargaining agreement, a party is compelled in any sense of the word to potentially arbitrate. However, we decline to give it that interpretation. The parties had collective choice when negotiating the terms of their contract and were not compelled to acquiesce to any term.

We now think that resolutions reached as a result of the arbitration and pre-arbitration procedures of the collective bargaining agreements can be valid. Although much of counsel's efforts in this matter were devoted to the history and extent of collective bargaining in Illinois and the authority of the parties to collectively bargain in general, we do not think that collective bargaining was ever at issue. The concern was that the parties had authority to do what they did—specifically to contract for the procedure by which employee grievances would be resolved without running afoul of the Personnel Code and rules. It is now clear that the arbitration provisions of the contract are not in conflict with the Personnel Code. Since the effective date of the 1980 personnel rules, a separate grievance system for disputes arising

under the collective bargaining agreement set up by contract no longer conflicted with the rules and is not void for that reason either. We also think that the Director of CMS is authorized by section 9(7) to enter into such a grievance resolution system through a collective bargaining agreement. Therein it is provided that the Director has the duty to:

"° ° ° conduct negotiations affecting pay, hours of work, or other working conditions of employees subject to ° ° ° (the Personnel Code)."

This is a separate grant of authority aside from his rulemaking powers.

However, even though it is a separate grant of authority, we do not interpret it to be *carte blanche* authority of the Director to agree to provisions of a collective bargaining agreement which are in conflict with his own duly promulgated personnel rules.

In claims for back pay based on grievance resolutions at the pre-arbitration stage or arbitration decisions, the defense that the specific contract provision through which entitlement is claimed is in conflict with a personnel rule still exists. It can be overcome by a showing that even though the provision is in conflict, under the facts of the specific claim, the claimant would still be entitled to back pay based on the applicable rule. If the rules are silent on the issue, the bargaining agreement controls.

We will not sit in review of an arbitrator's decisions in the sense of an appeal. We will not review issues of fact. We do not intend to decide jurisdictional disputes between the parties over the arbitrability of an issue. The checks and balances of a remedy in the nature of *mandamus* or injunctive relief available in the judicial system which were described by the *amicus curiae* counsel from CMS at the oral argument should dispose

of that. We wish to comment at this point on the contention of counsel for the Respondent made at the oral argument that his office did not believe that the Court of Claims with its limited jurisdiction is the proper forum for deciding the validity of the collective bargaining agreement. (tr. 8.) Section 8(a) of the Court of Claims Act specifically provides this Court with exclusive jurisdiction to hear and determine "all claims against the State founded upon any contract entered into with the State of Illinois." Moreover, the review we have made in this case and in others like it in the past and intend to continue to make is that of an ordinary lapsed appropriation. The issues were, was it a properly authorized expenditure, and did sufficient funds lapse from which the claim could have been paid. Contract defenses have always been allowed to be asserted in claims for lapsed appropriations in this Court.

Applying the above to the specific facts in this case, the record is relatively sparse. From the document attached to the complaint it appears that this claim arose out of the step 4(a) grievance resolution on May 31, 1979. The 1980 personnel rules became effective on September 1, 1980. The rules in effect at the time the grievance arose and at the time of its resolution did not contain the reference to grievance resolutions pursuant to the collective bargaining agreement which we quoted above. It would appear to us, therefore, that the procedure by which the resolution was reached in this claim was in conflict with the personnel rules and therefore null and void. However, we will hold our decision in abeyance for 30 days from the date of this opinion in order to afford the parties an opportunity to show us by written memorandum otherwise. Also we note that there is no departmental report on availability of funds on file yet in this case, so we would not be able

to grant an award at this time even if we were so inclined.

## ORDER ON MOTION TO DISMISS

MONTANA, C.J.

This cause comes on to be heard on the Court's own motion following our order of February 17, 1988.

On February 17, 1988, an order was entered in this matter which: noted that Claimant had not filed her annual status report as required by Rule 7 of the Rules of the Court of Claims, pointed out that failure to comply with Rule 7 was grounds for dismissal, and granted Claimant 21 days within which to comply. Prior to that order, the Clerk's office, although not required to do so, did mail Claimant a reminder that the report was due. The Claimant has not complied with said order.

This case was placed on general continuance by order of the Court entered March 20, 1986, with instructions to the Claimant to exhaust an administrative remedy. Since that time Claimant has filed nothing. This Court has the responsibility to manage its own caseload. While we will keep a case on general continuance for as long as is necessary, we cannot hold cases open indefinitely without any indication from the Claimant of the need to do so.

It is hereby ordered that this claim be, and hereby is, dismissed for want of prosecution and for failure to comply with Rule 7; it is further ordered that Claimant is granted leave to refile within one year of the date of this order.